1  **ROBERT R. HENSSLER JR.**
   California State Bar No. 216165
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  email: Robert_Henssler@fd.org

5  Attorneys for Mr. Cruz-Valles

                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

                     **(HONORABLE MARILYN L. HUFF)**

| UNITED STATES OF AMERICA, | ) | CASE NO.  08CR0198-H |
|---|---|---|
| Plaintiff, | ) | DATE: March 24, 2007 |
|  | ) | TIME: 2:00 p.m. |
| v. | ) |  |
|  | ) | STATEMENT OF FACTS AND |
| LUIS CRUZ-VALLES, | ) | MEMORANDUM OF POINTS AND |
|  | ) | AUTHORITIES IN SUPPORT OF |
| Defendant. | ) | DEFENDANT'S MOTIONS |
|  | ) |  |

                                 **I.**

                      **STATEMENT OF FACTS**[1]

**A.     Immigration and Personal History**

Luis Enrique Cruz-Valles-Valles was born in Mexico on April 29, 1975.  See Attachment A, a certified translation of Luis Cruz-Valles's birth certificate.  He entered the United States with his father Jose and mother Francisca in 1980.  See Attachment B, Declaration of Jose Cruz.[2]  The family immigrated on a petition filed by Mr. Cruz-Valles's United States citizen father, Jose Cruz.  Id.

Although Jose Cruz is not Luis Cruz-Valles's biological father, he has always held Luis out as his son.  Id.  For decades after they entered the United States, the Cruz-Valles family lived in a home in National

---

[1] Certain facts are taken from discovery provided by the government and Mr. Cruz-Valles-Valles reserves the right to contest these facts.

[2] The Declaration of Jose Cruz will be filed with the Court forthwith.

City. Id. In fact, the family has lived in the same house for nearly 25 years. Id. This house was a center of family activity, hosting large gatherings weekly. Id.

During Luis Cruz-Valles's youth, Jose Cruz was retired from his career in the United States Navy and civil service (where he worked as a housing inspector). Id. This allowed Jose Cruz to spend a great deal of time alone with his son Luis. Id.; see also Attachment C, Family Photos.[3] Luis Cruz-Valles's birth certificate reflects Jose Cruz is his father. See Attachment A. Additionally, Jose Cruz claimed Luis Cruz-Valles as a dependent on his tax returns throughout Luis Cruz-Valles's childhood. See Attachment D, Taxes.

As a young man, Luis Cruz-Valles got involved with the wrong crowd -- and, in 1999 he was convicted of 8 U.S.C. § 1324(a)(1)(A)(ii), and sentenced to 15 months custody. Following his time in custody he was deported.

It appears that Luis Cruz-Valles was last deported in May 2005. The May 2005 deportation is the only deportation included in the discovery produced by the government in this case. Based on the May 2005 deportation it appears that Mr. Cruz-Valles was never advised by an Immigration Judge that he was a United States citizen -- or, had a claim to derivative citizenship -- and, was simply ordered removed from the United States.

## II.

## MOTION TO DISMISS INDICTMENT DUE TO AN INVALID DEPORTATION

**A.     Summary of Argument**

In failing to advise Mr. Cruz-Valles's that he has a claim to derivative citizenship, the Immigration Judge committed legal error. Specifically, because Mr. Cruz-Valles satisfied all the citizenship requirements of the INA in force at the time of his birth, legitimation, and entry into the United States, the Immigration Judge erred in concluding he was an alien.[4]

---

[3]     The Cruz family photos will be filed with the Court forthwith.

[4]     In relevant part, Section 309 read:

The provisions of paragraphs (3),(4),(5), and (7) of section 301(a)...of this title ***shall apply as of the date of birth to a child born out of wedlock*** on or after the effective date of this act if the paternity of such child is established while such child is under the age of twenty-one years by legitimation.

8 U.S.C. § 1409(a) (1952) (emphasis added).

1       Admittedly, Mr. Cruz-Valles has not always been a model citizen but, as Chief Justice Warren observed in Trop v. Dulles, 356 U.S. 86, 92, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958) (plurality opinion), "citizenship is not a license that expires upon misbehavior." Because Mr. Cruz-Valles was prejudiced by the Immigration Judge's error, and because the Immigration Judge's inaccurate interpretation of the law deprived Mr. Cruz-Valles of judicial review it excuses his failure to exhaust remedies and the indictment against him should be dismissed.

**B.      Argument**

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998). Where direct judicial review of a deportation order is unavailable, the deportation's validity may be collaterally attacked in the subsequent criminal proceeding. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).

To succeed in a collateral attack on his prior deportation, Mr. Cruz-Valles must demonstrate that: 1) he exhausted all administrative remedies available to appeal his removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and 3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); Ubaldo-Figueroa, 364 F.3d at 1048. "An underlying removal order is 'fundamentally unfair' if: 1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects.'" Id. (citing Zarate-Martinez, 113 F.3d at 1197) (brackets omitted).

//

---

INA § 301(a)(7) provided:

a person born outside of the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

8 U.S.C. § 1401(a)(7) (1966).

INA § 301(b) provided that a person who derived citizenship under INA § 301(a)(7) would lose his citizenship if he was not physically present in the United States for five years between the ages of 14 and 23.

**1. The Immigration Judge's Failure to Advise Mr. Cruz-Valles of his Derivative Citizenship Deprived Mr. Cruz-Valles of Judicial Review and Excuses his Failure to Exhaust Remedies.**

Normally, a defendant charged with violating § 1326 who wishes to collaterally challenge his removal must have exhausted any administrative remedies available to him. See 8 U.S.C. § 1326 (d)(1). Ninth Circuit law makes clear, however, that such a waiver is invalid if it was influenced by an Immigration Judge's mis-advisal of the law. Ubaldo-Figueroa, 364 F.3d at 1049; Ortiz-Lopez, 385 F.3d at 1204 n.2; United States v. Ahumada-Aguilar, 295 F.3d 943 (9th Cir. 2002) (Immigration Judge's erroneous advice that respondent could reapply for admission if he did not appeal violated due process.). A mis-advisal of the law also deprives the person of judicial review. This is because a person who is misinformed about his potential for relief from deportation/removal cannot "make a considered and intelligent decision about whether to appeal the IJ's deportation order." Arrieta, 224 F.3d at 1080.

Here, it appears the Immigration Judge never told Mr. Cruz-Valles that he could derive citizenship through his United States Citizen father. Because Mr. Cruz-Valles was born, entered, and legitimated before 1981, the pre-1981 section 309 applies. See Minasyan v. Gonzalez, 401 F.3d 1069, 1075 (9th Cir. 2005) ("As with all forms of citizenship, derivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred."). As explained in detail below, pre-1981 INA section 309 only required Mr. Cruz-Valles to show "paternity established...by legitimation." 8 U.S.C. § 1409(a) (1952). By failing to properly advise Mr. Cruz-Valles, the Immigration Judge prevented him from making a "considered and intelligent decision" regarding an appeal. The mis-advisal excuses his failure to exhaust remedies.

**2. Mr. Cruz-Valles's Removal Proceedings Were "Fundamentally Unfair"**

As noted above, "[a]n underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (quoting Zarate-Martinez, 133 F.3d at 1197). To establish prejudice, Mr. Cruz-Valles does not have to show that he would have been granted relief. Instead, he need only show that he had a "'plausible' ground for relief from deportation." Id. at 1050 (citing Arrieta, 224 F.3d at 1079). Webster's Third New International Dictionary 1736 (1993), defines "plausible" as "superficially fair [or] reasonable . . ." and "superficially worthy of belief." This is, of course, a much lower and less discretionary standard than Mr. Cruz-Valles would face in immigration court.

Although Mr. Cruz-Valles carries the initial burden on the issue of prejudice, once Mr. Cruz-Valles makes a prima facie showing of prejudice, *"the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome."* United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added). Thus, if Mr. Cruz-Valles makes a prima facie showing of prejudice, and the government in response fails to prove his claim would have been dismissed without consideration, then this Court ***must*** grant Mr. Cruz-Valles's motion. See, e.g., Gonzalez-Valerio, 342 F.3d at 1054 (discussing the government's burden).

### a. Mr. Cruz-Valles met INA § 309's requirements for derivative citizenship by legitimation

A person's right to derive United States citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred. See Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005) ("As with all forms of citizenship, derivative citizenship is determined under the law in effect at time the critical events giving rise to eligibility occurred.").

In relevant part, the version of INA § 309 that existed at the time of Mr. Cruz-Valles's birth and legitimation read:

> The provisions of paragraphs (3),(4),(5), and (7) of section 301(a)...of this title [identifying those persons deemed U.S. citizens at birth] shall apply as of the date of birth to a child born out of wedlock on or after the effective date of this act *if the paternity of such child is established while such child is under the age of twenty-one years by legitimation.*

8 U.S.C. § 1409(a)(1952) (emphasis added). Unlike the current version of INA § 309, the pre-1981 version contains no requirement of a blood relationship between the father and child.[5] Rather, to derive citizenship,

---

[5]The statute now reads:
(a) The provisions of paragraphs (c), (d), (e), and (g) of section 1401 of this title, and of paragraph (2) of section 1408 of this title, shall apply as of the date of birth to a person born out of wedlock if—
    (1) a blood relationship between the person and the father is established by clear and convincing evidence,
    (2) the father had the nationality of the United States at the time of the person's birth,
    (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, *and*
    (4) while the person is under the age of 18 years—
        (A) the person is legitimated under the law of the person's residence or

a person only needed to meet the requirements of INA § 301 and show "paternity... established....by legitimation." 8 U.S.C. § 1409(a) (1952).

Federal immigration law explicitly defers to the states (or country of domicile), in determining the specific requirements for legitimation. 8 U.S.C. § 1101(b)(1)(C). The statute provides that a child who is unmarried and under twenty-one years of age may be legitimated:

> under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

8 U.S.C. § 1409(a) (1952). Whether Mr. Cruz-Valles's "paternity is established by legitimation" therefore is determined under the state law of California, where Mr. Cruz-Valles grew up in the care and custody of his father -- or, under the law of Mexico, where Jose Cruz validly recognized Luis Cruz-Valles as his son.

### I.   Mr. Cruz-Valles was validly legitimated by his father under California law.

Under California law, "a man who receives a child into his home and openly holds the child out as his natural child is presumed to be the natural father of the child." Cal. Fam.Code, § 7611(d). Under such circumstances, there is a statutory presumption of paternity that is rebuttable only "in an appropriate action" by the biological father. In re Nicholas H., 28 Cal. 4th 56, 46 P.3d 932 (Cal. 2002).

Thus, under California law, "paternity established by legitimation" does not require a blood relationship between the child and parent. Indeed, the California Supreme Court has held that even the presumed father's admission that he was not the child's biological father does not rebut the presumption of paternity that arises when he receives the child into his home and holds the child out as his natural child. Id. at 63. As the Court of Appeals explained in In re Salvador M., "[t]he paternity presumptions are driven, not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family." 111 Cal .App .4th 1353, 1357-1358, 4 Cal.Rptr.3d 705, 708 (Cal.Ct. App. 2003).[6]

---

        domicile,
    B) the father acknowledges paternity of the person in writing under oath, or
    (C) the paternity of the person is established by adjudication of a competent court.
INA § 309 (emphasis added)

[6] Such interest are echoed by the stated concerns of the Immigration and Naturalization Act. See H.R.Rep. No. 85-1199, pt. 2 (1957), reprinted in 1957 U.S.C.C.A.N. 2016, 2020 (observing that the

Mr. Cruz-Valles's paternity was validly established by California law. It is undisputed that Jose Cruz raised Mr. Cruz-Valles as his son. See Attachment B. He housed him, fed him, provided for him, put him through school, played ball with him, and introduced him to others as this son. Id.

Jose Cruz claimed Luis as a dependant on his tax returns. Jose Cruz attended parent/teacher conferences as Luis Cruz-Valles's father. Id. Luis Cruz-Valles's birth certificate identifies Jose Cruz as his father.

Because Mr. Cruz-Valles's paternity was validly "established by legitimation" under California law -- and because nothing in then-existing section 309 required a blood relationship between them -- Mr. Cruz-Valles derived citizenship from his father if his father was "physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years." See INA § 301. As Jose Cruz has resided continuously in San Diego for approximately the past 28 years, there can be no serious question he satisfies INA § 301's residency requirement for the United States citizen parent.

The Ninth Circuit has cautioned that the INA "should be construed in favor of family units and the acceptance of responsibility by family members." Solis-Espinoza v. Gonzales, 401 F.3d 1090, 1094 (9th Cir. 2005)(Citing Kaliski v. Dist. Dir. of INS, 620 F.2d 214, 217 (9th Cir.1980)). This purpose would be defeated by a construction of "paternity established by legitimation" that excluded the man who "in every practical sense" was Mr. Cruz-Valles's father.[7] Id.

### ii. Mr. Cruz-Valles was validly legitimated by his father under Mexican law.

As noted above, legitimation is determined by the law of the child or father's state or domicile, *whether inside or outside the United States*. 8 U.S.C. § 1101(b)(1)(c). In other words, under the federal law

---

"legislative history of the Immigration and Nationality Act clearly indicates that Congress intended to provide for a liberal treatment of children and was concerned with the problem of keeping families of United States citizens and immigrants united.").

[7] Moreover, as the Supreme Court recently noted, "deliberate selection of language differing from that used in the earlier Acts can indicate that a change of law was intended." Fernandez-Vargas v. Gonzales, 126 S.Ct. 2422, 2429 (2006) (citing Brewster v. Gage, 280 U.S. 327, 337 (1930)). By adding an entirely new element to INA § 309, Congress unmistakably intended to close an existing loophole, namely the possibility that persons could derive citizenship without blood relationships.

controlling Mr. Cruz-Valles's claim to citizenship, the legitimating acts -- as defined by state or foreign law -- can take place any time before he turns twenty-one.

Under any circumstances, Luis Cruz-Valles was conclusively legitimated under Mexican law even before his entry into the United States. Mexican Civil Code section 360 provides:

> The relationship of children born out of wedlock with relation to the mother is solely the result of birth. ***With respect to the father, it is established only through voluntary recognition*** or a judgment declaring paternity."

See Attachment E, Excerpt of Mexican Civil Code (emphasis added). Civil Code section 369(I) provides that the "voluntary recognition" of a child may be accomplished "***on the birth certificate, before the Civil Registry Judge.***" Id. The uncontroverted evidence is that Jose Cruz and his wife took Luis Cruz-Valles to the Civil Registrar on April 24, 1979 and declared that he was Luis's father. See Attachment A, Certified Translation of Luis Cruz-Valles Birth Certificate. As of that date, Luis Cruz-Valles "paternity [was] established. . . by legitimation," 8 U.S.C. § 1409 (1952), "under the law of the child's residence or domicile." 8 U.S.C. § 1101(b)(1)(c).

  **c.**  **Mr. Cruz-Valles was prejudiced by the Immigration Judge's Failure to Advise him of his Derivative Citizenship.**

The immigration judge's failure to advise Mr. Cruz-Valles of his derivative citizenship prejudiced Mr. Cruz-Valles in two ways. First, under the correct legal standard, a reasonable immigration judge would not have concluded the government had met its burden of establishing alienage by "clear, unequivocal and convincing evidence." See Woodby v. INS, 385 U.S. 276, 281 (1966). Second, as a citizen of the United States, Mr. Cruz-Valles was not removable.

California's presumption of paternity relieves the defendant of the presumption of alienage. As such, the Immigration Judge misadvised Mr. Cruz-Valles when she failed to inform him of his derivative citizenship.

Moreover, if the immigration judge had held the government to its burden of proving alienage, the government could not have done so. The version of INA § 309 applicable at Mr. Cruz-Valles's birth extended the benefit of derivative citizenship to children for whom "paternity was established by legitimation," and expressly deferred to California (or Mexican) law in determining when paternity was so established. California's presumption of paternity permits legitimation by a non-biological father, Nicholas H., 28 Cal.

1  4th at 63, and Jose Cruz satisfies INA § 301's residency requirements. And, Mexican law provides that
2  "voluntary recognition" of a child may be accomplished "on the birth certificate, before the Civil Registry
3  Judge." See Attachment E, Mexican Civil Code section 369(I). Simply put, because Mr. Cruz-Valles derived
4  U.S. citizenship under the law in effect at the time of his legitimation, he is not removable at all.

### III.

### MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Cruz-Valles moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely connected investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

//

1    (3) <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and tangible
2 evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the
3 Government's case. Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition
4 of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>,
5 427 U.S. 97 (1976).

6    (4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The Government
7 must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). This request includes any
8 cooperation or attempted cooperation by the defendant as well as any information that could affect any base
9 offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also
10 requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal
11 history, and information relevant to any other application of the Guidelines.

12    (5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of his prior record. Fed. R.
13 Crim. P. 16(a)(1)(B).

14    (6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts
15 under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon
16 request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the
17 general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(B) at trial.
18 The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time
19 to adequately investigate and prepare for trial.

20    (7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search,
21 either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(C).

22    (8) <u>Request for Preservation of Evidence</u>. The defendant specifically requests the preservation of
23 all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the
24 possession, custody, or care of the Government and which relate to the arrest or the events leading to the arrest
25 in this case.

26    (9) <u>Tangible Objects</u>. The defendant requests the opportunity to inspect and copy as well as test,
27 if necessary, all other documents and tangible objects, including photographs, books, papers, documents,
28 fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for

use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(2)(c). ***Specifically, the defendant requests to view the A-File.***[8]

(10) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(11) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. <u>See</u> Fed R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

(12) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(14) <u>Witness Addresses</u>. The defendant requests the name and last known address of each prospective Government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a Government witness.

(15) <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

(16) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

---

[8] As noted below, in this case the government has refused to allow defense counsel to view the A-file without a Court Order.

      (17) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963). In <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

      (18) <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

      (19) <u>Agreements Between the Government and Witnesses</u>. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

      (20) <u>Informants and Cooperating Witnesses</u>. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Cruz-Valles. The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

      (21) <u>Bias by Informants or Cooperating Witnesses</u>. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>, 405

1  U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were
2  made to the witness to secure cooperation with the authorities.

3    (22) <u>Government Examination of Law Enforcement Personnel Files</u>. Mr. Cruz-Valles requests that
4  the Government examine the personnel files and any other files within its custody, care or control, or which
5  could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Cruz-
6  Valles requests that these files be reviewed by the Government attorney for evidence of perjurious conduct
7  or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory,
8  pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). The obligation to examine
9  files arises by virtue of the defense making a demand for their review: the Ninth Circuit in <u>Henthorn</u> remanded
10 for <u>in camera</u> review of the agents' files because the government failed to examine the files of agents who
11 testified at trial. This Court should therefore order the Government to review all such files for all testifying
12 witnesses and turn over any material relevant to impeachment or that is exculpatory to Mr. Cruz-Valles prior
13 to trial. Mr. Cruz-Valles specifically requests that the prosecutor, not the law enforcement officers, review
14 the files in this case. The duty to review the files, under <u>Henthorn</u>, should be the prosecutor's. Only the
15 prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

16   (23) <u>Expert Summaries</u>. Defendant requests written summaries of all expert testimony that the
17 government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief,
18 written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications.
19 Fed. R. Crim. P. 16(a)(1)(E). This request includes, but is not limited to, fingerprint expert testimony.

20   (24) <u>Residual Request</u>. Mr. Cruz-Valles intends by this discovery motion to invoke his rights to
21 discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution
22 and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Cruz-Valles
23 requests that the Government provide him and his attorney with the above requested material sufficiently in
24 advance of trial to avoid unnecessary delay prior to cross-examination.

25                                **VI.**
26 **<u>COMPEL THE GOVERNMENT TO ALLOW DEFENSE COUNSEL TO VIEW THE A-FILE</u>**
27   Defense counsel for Mr. Cruz-Valles has been unable to view Mr. Cruz-Valles A-file in this case
28 because the government refuses to allow an A-file viewing without a Court Order. An A-file viewing is

needed to examine as evidence favorable to the defendant on the issue of guilt. As such, Mr. Cruz-Valles requests a Court Order compelling the government to allow defense counsel to view the A-file. Such exculpatory evidence falls within the <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) definition of evidence favorable to the accused. <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).[9]

## VII.
## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

Mr. Cruz-Valles and defense counsel have not received all the discovery in this case. In fact, as noted above, the government has refused to allow defense counsel to view the A-file. As new information comes to light, the defense may find it necessary to file further motions -- or supplement the instant motions. Therefore, defense counsel requests the opportunity to file further motions based upon information gained from any further discovery.

## VIII.
## CONCLUSION

For the reasons stated above, Mr. Cruz-Valles respectfully requests that this Court grant the foregoing motions.

Respectfully submitted,

/s/ *Robert R. Henssler, Jr.*

Dated: March 10, 2008

**ROBERT R. HENSSLER JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cruz-Valles

H:\RRH\cases\1326\cruz-valles\motions.wpd

---

[9] Because defense counsel has been barred from viewing the A-file it may be necessary to supplement this motion and/or file additional motions based on information contained therein.