1  **ROBERT R. HENSSLER JR.**
   California State Bar No. 216165
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  email: Robert_Henssler@fd.org

5  Attorneys for Mr. Cruz-Valles

                    UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF CALIFORNIA

                        **(HONORABLE MARILYN L. HUFF)**

| UNITED STATES OF AMERICA, | ) | CASE NO.  08CR0401-H |
|---|---|---|
| Plaintiff, | ) | DATE: April 7, 2007 |
| v. | ) | TIME: 2:00 p.m. |
|  | ) | REPLY TO GOVERNMENT'S RESPONSE |
| **LUIS CRUZ-VALLES**, | ) | IN OPPOSITION TO MR. CRUZ-VALLES'S |
|  | ) | MOTION TO DISMISS INDICTMENT BASED |
| Defendant. | ) | ON AN INVALID DEPORTATION |
|  | ) |  |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
      DAVID LESHNER, ASSISTANT UNITED STATES ATTORNEY:

   Mr. Cruz-Valles, through undersigned counsel, replies to the government's Response in Opposition to his Motion to Dismiss the Indictment due to an Invalid Deportation.

//
//
//
//
//
//
//
//

# I.

# ARGUMENT

**A.     Pre-1986 INA § 309 Did Not Require a "Blood Relationship"**

The parties agree that the pre-1986 version of INA § 309 applies to Mr. Cruz-Valles case. <u>See</u> United States Response at 5-6. Thus, here, the issue is whether the pre-1986 version of INA § 309 required a "blood relationship" to establish paternity. Based on the plain language of the statute and traditional cannons of statutory interpretation it did not. As explained in Mr. Cruz-Valles's previously filed Motion to Dismiss the Indictment, in relevant part, the version of INA § 309 that existed at the time of Mr. Cruz-Valles's birth and legitimation read:

> The provisions of paragraphs (3),(4),(5), and (7) of section 301(a)...of this title [identifying those persons deemed U.S. citizens at birth] shall apply as of the date of birth to a child born out of wedlock on or after the effective date of this act ***if the paternity of such child is established while such child is under the age of twenty-one years by legitimation***.

8 U.S.C. § 1409(a)(1952) (emphasis added). Unlike the current version of INA § 309, the pre-1986 version contains no requirement of a blood relationship between the father and child.[1] Rather, to derive citizenship, a person only needed to meet the requirements of INA § 301 and show "paternity... established....by legitimation." 8 U.S.C. § 1409(a) (1952).

Even thought the pre-1986 version of INA § 309 contains ***no language*** indicating it requires a blood relationship, the government insists the Court should imply such a requirement exists. <u>See</u> United States

---

[1]The statute now reads:
(a) The provisions of paragraphs (c), (d), (e), and (g) of section 1401 of this title, and of paragraph (2) of section 1408 of this title, shall apply as of the date of birth to a person born out of wedlock if—
    (1) a blood relationship between the person and the father is established by clear and convincing evidence,
    (2) the father had the nationality of the United States at the time of the person's birth,
    (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, *and*
    (4) while the person is under the age of 18 years—
        (A) the person is legitimated under the law of the person's residence or domicile,
        B) the father acknowledges paternity of the person in writing under oath, or
        (C) the paternity of the person is established by adjudication of a competent court.
INA § 309 (emphasis added)

1  Response at 5-9.  Simply stated, the government is wrong.  As noted above, when Congress sought to require
2  a "blood relationship" it did so clearly and explicitly with the 1986 amendments.  The Supreme Court has
3  repeatedly held that "*deliberate selection of language differing from that used in the earlier Acts can*
4  *indicate that a change of law was intended.*"  Fernandez-Vargas v. Gonzales, 126 S.Ct. 2422, 2429 (2006)
5  (citing Brewster v. Gage, 280 U.S. 327, 337 (1930)) (emphasis added).  Here, Congress's omission of the
6  "blood relationship" language in the pre-1986 statute indicates that it did not intend to require a blood
7  relationship.  Why would Congress add the "blood relationship" language if the statute already required a
8  blood relationship?  By adding an entirely new element to INA § 309, Congress unmistakably intended to
9  close an existing loophole, namely the possibility that persons could derive citizenship without blood
10 relationships.

11      The government cites two Supreme Court decisions, Miller v. Albright, 523 U.S. 420 (1998), and
12 Tuan Anh Nguyen v. INS, 533 U.S. 53 (2001), and claims they are instructive on the issue but neither
13 addresses the issue presented here -- whether the pre-1986 version of INA § 309 required a "blood
14 relationship" to establish paternity.  See United States Response at 6-7.  And, the government relies on two
15 Ninth Circuit opinions, Scales v. INS, 232 F.3d 1159 (2000) and Solis-Espinoza v. Gonzales, 401 F3d 1090
16 (2005), but concedes neither addresses the issue presented.  See United States Response at 7-8.

17      To counsel's knowledge, there is only one case that addresses this issue, United States v.
18 Marguet-Pillado, 2007 U.S. Dist. LEXIS 51181 (S.D. Cal. 2007), but it was wrongly decided and obviously
19 not binding on this Court.  Specifically, the Marguet-Pillado decision fails to give meaning to the change
20 Congress made to the language of the statute with the 1986 Amendments.  Indeed, when Congress sought to
21 require a blood-relationship it did so explicitly with the 1986 Amendments.  Moreover, in Marguet-Pillado,
22 Judge Gonzalez noted that Jan J. Bejar, a private immigration attorney and director of the immigration clinic
23 at the University of San Diego School of Law concluded that his "review of the literature on derivative
24 citizenship revealed no obstacle to [defendant] deriving citizenship from his father, provided he was properly
25 legitimated under California law."  Marguet-Pillado, 2007 U.S. Dist. LEXIS 51181 *7-8.  Likewise, here,
26 there is no obstacle to Mr. Cruz-Valles deriving citizenship from his father, provided he was legitimated under
27 California or Mexican law.
28 //

1  **B.     <u>Under California and Mexican Law, Legitimation Does Not Require a Blood Relationship.</u>**

2  The government concedes that "[l]egitimation may occur under the law of the domicile or residence 3 of the father or child," but argues Mr. Cruz-Valles has not met the requirements under California or Mexican 4 law. <u>See</u> United States Response at 9-11. As explained below, the government is mistaken.

5  First, the government says that California Civil Code § 230 should apply to any analysis of Mr. Cruz- 6 Valles legitimation under California law. <u>Id</u>. However, Mr. Cruz-Valles was not subject to California law 7 until moving here in 1980. <u>See</u> <u>Minasyan v. Gonzales</u>, 401 F.3d 1069, 1075 (9th Cir. 2005) ("As with all 8 forms of citizenship, derivative citizenship is determined under the law in effect at time the critical events 9 giving rise to eligibility occurred."). Because, as the government notes, § 230 was repealed in 1976, <u>see</u> 10 United States Response at 10, it does not apply to the analysis of whether Mr. Cruz-Valles was legitimated 11 under California law. Instead, California Civil Code Section 7004, enacted in 1975, should apply. In Mr. 12 Cruz-Valles Motion to Dismiss the Indictment due to an Invalid Deportation counsel referred to California 13 Family Code § 7611 but, it seems that Civil Code § 7004 which later became Family Code § 7611 applies 14 here. Family Code Section 7611 is a recodification – with slight modification -- of Civil Code Section 7004, 15 enacted in 1975. Civil Code Section 7004 read: "A man is presumed to be the natural father of a child 16 if...after the child's birth, he and the child's mother have married...and...he receives the child into his home 17 and openly holds out the child as his natural child." And, under California law, the word "father" does not 18 imply a biological relationship. <u>See e.g.</u>, <u>In re Zacharia D</u>., 6 Cal.4th 435, 451 (1993) ("[O]nly a presumed, 19 not a mere biological, father is a 'parent' entitled to receive reunification services under section 361.5."). 20 There is no real dispute that the requirements of Civil Code Section 7004 were satisfied in Mr. Cruz-Valles's 21 case.

22  Second, the government argues that because there is no case law interpreting the relevant Mexican 23 law of legitimation, the court should ignore it. <u>See</u> United States Response at 11 ("proper interpretation of 24 a statutory scheme requires more than reliance on naked statutory language shorn of interpretation or 25 context."). This is nonsense -- there is no such requirement when a court interprets a law. Indeed, this is what 26 courts do everyday -- give meaning to laws both foreign and domestic. <u>See e.g.</u>, <u>Alameda Films S A De C</u> 27 <u>V v. Authors Rights Restoration Corp</u>., 331 F.3d 472 (5th Cir. 2003) (reviewing district court's interpretation 28 //

of Mexican Civil Code). The relevant provisions of the Mexican Civil Code are clear. Mexican Civil Code section 360 provides:

> The relationship of children born out of wedlock with relation to the mother is solely the result of birth. ***With respect to the father, it is established only through voluntary recognition*** or a judgment declaring paternity.

See Attachment E to the Motion to Dismiss the Indictment due to an Invalid Deportation, Excerpt of Mexican Civil Code (emphasis added). Civil Code section 369(I) provides that the "voluntary recognition" of a child may be accomplished "***on the birth certificate, before the Civil Registry Judge.***" Id. The uncontroverted evidence is that Jose Cruz and his wife took Luis Cruz-Valles to the Civil Registrar on April 24, 1979 and declared that he was Luis's father. See Attachment A to the Motion to Dismiss the Indictment due to an Invalid Deportation, Certified Translation of Luis Cruz-Valles Birth Certificate. As of that date, Luis Cruz-Valles "paternity [was] established. . . by legitimation," 8 U.S.C. § 1409 (1952), "under the law of the child's residence or domicile." 8 U.S.C. § 1101(b)(1)(c).

Unable to respond to Mr. Cruz-Valles's citation to the Mexican Civil Code, the government resorts to attacking Mr. Cruz-Valles's father, Jose Cruz. See United States Response at 11 ("when Mr. Cruz 'declared' himself Defendant's father before the Civil Registrar (Motion at 8), that declaration was untrue."). As detailed in the Declaration of Jose Cruz, however, there was nothing untrue about Jose Cruz identifying himself as Mr. Cruz-Valles "father." See Attachment B to the Motion to Dismiss the Indictment due to an Invalid Deportation. Jose Cruz was not claiming to be Mr. Cruz-Valles biological father (and never has) but, he was voluntarily recognizing Mr. Cruz-Valles as his son, as permitted under Mexican law.

**C.    Mr. Cruz-Valles Was in the Legal Custody of Jose Cruz at the time of Legitimation.**

The government claims Mr. Cruz-Valles has not established he was in the legal custody of Jose Cruz at the time of his legitimation and that "Defendant's motion ignores this statutory requirement." See United States Response at 11. To the contrary, Mr. Cruz-Valles Motion and the accompanying Declaration of Jose Cruz clearly demonstrate that Luis Cruz-Valles was in the custody of Jose Cruz in Mexico by at least 1979 when Jose Cruz took Luis to the Registrar in Tijuana, Mexico and gave Luis his last name and identified Luis as his son. See id.

//
//

## II.

## CONCLUSION

For the reasons stated above, Mr. Cruz-Valles respectfully requests that this Court grant his motions.

Respectfully submitted,

/s/ *Robert R. Henssler, Jr.*

Dated: March 26, 2008

**ROBERT R. HENSSLER JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Cruz-Valles

1 | **CERTIFICATE OF SERVICE**

2 | Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his

3 | information and belief, and that a copy of the foregoing document has been served this day upon:

4 | David Leshner
U S Attorneys Office Southern District of California
5 | Email: David.Leshner@usdoj.gov

6

7

8 | Dated: March 26, 2008                    */s/ Robert R. Henssler, Jr.*
                                             ROBERT R. HENSSLER, JR.
9                                            Federal Defenders of San Diego, Inc.
                                             225 Broadway, Suite 900
10                                           San Diego, CA 92101-5030
                                             (619) 234-8467  (tel)
11                                           (619) 687-2666  (fax)
                                             e-mail: Robert_Henssler@fd.org

12